**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACK D. PROSSER, | ) Case No. 15-cv-01036-SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING IN PART, DENYING |
| | ) IN PART MOTION TO DISMISS OR |
| v. | ) MOTION FOR JUDICIAL NOTICE, AND |
| | ) MOTION FOR SUMMARY JUDGMENT |
| NAVIENT SOLUTIONS, INC.; a | ) |
| Delaware corporation; SLM Corp, | ) |
| a Delaware corporation, | ) |
| | ) |
| Defendants. | ) |

## I.   **INTRODUCTION**

The Court has received Defendants' motion to dismiss or, in the alternative, motion for summary judgment. See ECF No. 16 ("Mot."). The motion is supported by a motion requesting judicial notice of three exhibits. See ECF No. 17 ("JN Mot."). The motion is fully briefed and appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b). See ECF Nos. 19 ("Opp'n"), 21 ("Reply"). The Court has also reviewed and approved a stipulation dismissing certain parties and claims. See ECF No. 20. The Court thus DENIES as moot any argument related only to a dismissed party or claim. Otherwise, the Court turns now to the above, still-pending motions.

**United States District Court**
For the Northern District of California

## II.  **FACTS**

The facts of this case are relatively straightforward, and are only made unclear or confusing by a lack of specificity in the First Amended Complaint (FAC), ECF No. 15.

Plaintiff Zack D. Proser attended Kenyon College, a four year liberal arts college in Ohio, from 2000 to 2004, graduating with a Bachelor's degree in Philosophy.  FAC ¶ 7.  Plaintiff's father, Michael Proser (a Maryland resident), promised to pay "all or almost all of the college costs."  Id. at ¶ 9.  To do so, Michael Proser applied for and received six student loans from a Maryland bank under the Federal Family Education Loan program (FFELP).  Id. at ¶ 10.  The loans were guaranteed by United Student Aid Funds, Inc., and eventually assigned to Defendants Navient Solutions, Inc. and SLM Corp, commonly known as Sallie Mae or Sallie Mae Servicing. Id. at ¶¶ 2, 10, 11.  The problem was that Michael Proser allegedly "forged [P]laintiff's name on each of the loan applications without [P]laintiff's knowledge or consent."  Id. at ¶ 11.

All loans are paid in full, except one which has a balance of $5,000.  Id. at ¶ 13.  Defendants made reports to Credit Reporting Agencies ("CRAs") that monthly payments on three of the loans were up to 90 days late as of July 2011 and monthly payments on two of the loans were up to 90 days late in March 2009.  Id. at ¶ 14.  The FAC does not specify when Defendants made these reports.

Plaintiff does not state when he learned of these reports. Plaintiff at another unspecified time "paid under protest in an attempt to protect his credit standing" and "to mitigate damage to his credit standing."  Id. at ¶¶ 13, 22.  Plaintiff also at unspecified times "repeatedly informed Sallie Mae that the loans

**United States District Court**
For the Northern District of California

were procured through fraud, forgery[,] and identity theft by his father."  Id. at ¶ 15.

Plaintiff pursued two avenues of investigation.  Plaintiff submitted a report to the Maryland State Police in October 2013. Id. at ¶ 16.  In January 2014, Plaintiff received an email from the police advising that Plaintiff's mother and father admitted they had signed Plaintiff's name to the loans.  Id. at ¶ 18.

Plaintiff, also allegedly in October 2013, provided a theft affidavit, handwriting samples, and a police report to Defendants. Id. at ¶ 17.  After receiving the email from police, Plaintiff asked Defendants to recognize that Plaintiff had not signed the master promissory notes, to thus conclude the loans were illegally obtained through fraud and forgery, and to therefore stop reporting the loans to the CRAs.  See id. at ¶¶ 19, 20.  In March 2014, Defendants wrote to Plaintiff recognizing that Plaintiff's parents "did admit to apply[ing] for the loans on [Plaintiff's] behalf." Id. at ¶ 21.  However, Defendants ultimately denied Plaintiff's request to cease reporting the loans to the CRAs because Plaintiff was the beneficiary of the loan, Plaintiff made certain payments on the loan, and Plaintiff received correspondence at the correct address and was thus aware of the debt.  Id. at ¶ 21.

Plaintiff alleges that all correspondence went to the home of his parents in Maryland, that Plaintiff therefore did not see it, and that his parents did not make him aware of it.  Id. at ¶ 22. Plaintiff conceded he made certain payments at an unspecified time after learning of the loans.  Id. at ¶ 22.

Plaintiff sent dispute letters to CRAs in May 2014, who in turn (per the law) notified the Defendant, who in turn (per the

**United States District Court**
For the Northern District of California

law) conducted an investigation concerning the dispute and decided the reports would remain unchanged. Id. at ¶ 23. Plaintiff alleges the investigation was unreasonable. Id. at ¶ 23.

As to damages, Plaintiff alleges only that:

> [P]laintiff has suffered actual damages in the form of (a) lost credit opportunities, (b) harm to his credit reputation and credit score, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety[,] and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to his great detriment and loss.

Id. at ¶ 14.

Plaintiff seeks damages pursuant to the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681 et seq. and the California Credit Reporting Agencies Act ("CCRAA"), Civil Code § 1785.25(a). Defendants seeks dismissal for failure to state a claim or else summary judgment, and submits documents both with its motion and with a separate motion for summary judgment.

**III. LAW**

    **A.**  **Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "the tenet that a court

4

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

While normally a Court would be limited to the complaint, certain additional documents may be considered.  Documents referenced in a complaint may be attached to a Rule 12(b)(6) motion or incorporated by reference into the complaint by the Court for purposes of deciding a 12(b)(6) motion.  See Rubio v. Capital One Bank, 613 F.3d 1195, 1199 (9th Cir. 2010) (permitting a court to consider a document submitted "'whose contents are alleged in [the] complaint and whose authenticity no party questions[.]' Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)."); Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1159-60 (9th Cir. 2012) ("the district court may, but is not required to incorporate documents by reference," and doing so will be reviewed for abuse of discretion).  Stated more succinctly, if the complaint "necessarily relies" on a document, the Court may consider that document if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and

**United States District Court**
For the Northern District of California

(3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted).

    **B.**   <u>**Motion for Summary Judgment**</u>

    Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986). "A moving party without the ultimate burden of persuasion at trial —- usually, but not always, a defendant —- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

    "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." <u>Id.</u> "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." <u>Id.</u> "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

    Per Fed. R. Civ. P. 12(d), a court may sua sponte convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment if "matters outside the pleadings are presented to and not

**United States District Court**
For the Northern District of California

excluded by the court." <u>In re Mortgage Elec. Registration Sys.,</u> <u>Inc.</u>, 754 F.3d 772, 781 (9th Cir. 2014) (refusing to make the conversion where a district court based its dismissal of a case entirely on deficiencies in the pleadings).

   **C.   The FCRA and CCRAA**

   The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 52 (2007).  The FCRA thus "imposes some duties on the sources that provide credit information to [CRAs], called 'furnishers' in the statute." <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1162 (9th Cir. 2009).  A furnisher's duties are triggered when a CRA notifies a furnisher that a consumer has disputed information that the furnisher had provided to the CRA.  <u>Id.</u>; 15 U.S.C. § 1681s-2(b)(1).  Upon receipt of notice, the furnisher must "conduct an investigation with respect to the disputed information, . . . review all relevant information provided by the consumer reporting agency" about the dispute, and correct any inaccuracies. <u>Id.</u>; <u>see</u> <u>also</u> <u>Nelson v. Chase Manhattan Mortg. Corp.</u>, 282 F.3d 1057, 1059 (9th Cir. 2002) (describing furnisher's duties under the FCRA); <u>Welsh v. Am. Home Mortgage Assets, LLC</u>, No. 4:13-CV-04750 CW, 2014 WL 4954144, at *12 (N.D. Cal. Sept. 30, 2014) (discussing and applying standards).  A consumer may bring suit against a furnisher who fails to fulfill these duties.  15 U.S.C. § 1681o; <u>Nelson</u>, 282 F.3d at 1059; <u>Welsh</u>, 2014 WL 4954144, at *12.  Suits must be filed within the earlier of two years from the date of discovery or five years from the date of the violation.  <u>Deaton v. Chevy Chase Bank</u>, 157 Fed. Appx. 23, 25 (2005); <u>see also</u> 15 U.S.C. § 1681p.

**United States District Court**
For the Northern District of California

1    The CCRAA as related to this case is largely preempted.

2  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 889 (9th Cir

3  2010).   Insofar as it is not, the law under the CCRAA is highly

4  similar in form and substance to the CFRA.   See Cal. Civ. Code §

5  1785.25(a); Cal. Civ. Code § 1785.33.

6

7  **IV.   <u>DISCUSSION</u>**

8    The Court considers, in the following order, the four issues

9  raised by Defendants: (1) whether and what parts of Plaintiff's

10  case are time-barred; (2) whether Plaintiff failed to properly

11  allege claims under the FCRA, or if alleged such claims can be

12  disposed of on summary judgment; (3) if Plaintiff ratified the

13  loans and thus assumed responsibility for them; and (4) do the

14  CCRAA claims fail.   The Court will consider each argument under the

15  motions to dismiss standard.   The Court does not find it necessary

16  to convert this to a motion for summary judgment, and thus will not

17  consider any extrinsic materials except those that can be

18  incorporated into the complaint within the bounds of a 12(b)(6)

19  motion.   See In re Mortgage Elec., 754 F.3d at 781; Rubio, 613 F.3d

20  at 1199; Branch, 14 F.3d at 454; Davis, 691 F.3d at 1159-60;

21  Marder, 450 F.3d at 448.   The Court will then address Defendants'

22  request for summary judgment separately near the end of this Order.

23    **A.   <u>Whether Claims Are Time-Barred</u>**

24    Certain claims are not time barred if viewed in the limited

25  frame urged by the Plaintiff.

26    Defendants cite the statute of limitations for fraud, forgery,

27  and identity theft.   Mot. at 13, Reply at 7.   However, Defendants

28  fail to address why these limits should apply to the violations

United States District Court
For the Northern District of California

alleged by Plaintiff, not brought under these statutes.  Thus the
Court rejects Defendants' argument in this respect.

Plaintiff argues only for violations of the FCRA and CCRAA.
The FCRA states that a case may be brought not later than "the
earlier of" either "(1) 2 years after the date of discovery by the
plaintiff of the violation that is the basis for such liability; or
(2) 5 years after the date on which the violation that is the basis
for such liability occurs." 15 U.S.C.A. § 1681p.  The United
States Supreme Court has directly addressed what this means in TRW
Inc. v. Andrews, 534 U.S. 19 (2001).  There, a suit was filed
almost 17 months after discovery of a third party's fraudulent
conduct and over two years after the relevant CRA's first
disclosures of the consumer's information.  Id. at 24-25.  The suit
alleged that because credit information was provided based on only
a partial match of requestor's information (the requestor being a
fraudulent imposter), the relevant agency had engaged in a willful
violation of Section 1681e(a), which in turn is governed by Section
1681p.  Id. at 25-26, 28.  The Supreme Court concluded that Section
1681p precluded a discovery rule, i.e., that the statute began to
run when a party knows or had reason to know it was injured.  Id.
at 28.[1]  The Supreme Court also declined to reach the question (as
it had not been raised in lower courts) of whether the statutory
time did not arise until the consumer actually suffered the

---

[1] The Ninth Circuit has since cited that the Supreme Court had made
clear that the Ninth Circuit's own, earlier application of the
discovery rule had gone too far, endorsing instead TRW as the
proper standard for the FCRA.  See Mangum v. Action Collection
Serv., Inc., 575 F.3d 935, 941 (9th Cir. 2009).  The Court here
notes with concern that neither Plaintiff nor Defendants cited any
of these binding authorities to the Court in their briefs.

United States District Court
For the Northern District of California

emotional distress, missed opportunities, and inconvenience catalogued in the complaint.  Id. at 33-35.  Yet the Supreme Court in dicta noted that this argument had not been embraced by the Ninth Circuit and that the argument (even if valid) would be unlikely to aid claims of willful violations.  Id. at 34-35.

The Court must read the statute in light of TRW.  Thus Plaintiff's case is time-barred if it was not brought within the earlier of two years of discovery by Plaintiff of the basis for liability or five years of the date of the violation itself.

Here, the FAC is not entirely clear about the date on which Plaintiff learned of the violation.  Some Courts have quite reasonably dismissed on (in part) this ground.  See Welsh, 2014 WL 4954144, at *12.  But making all reasonable inferences in favor of the FAC, the Court can infer the Plaintiff must have learned of the loans prior to September 2013, which date may have been within two years of the filing dated of the FAC, April 2015.  See FAC ¶ 13 (electronically filed on April 16, 2015).

However, here the Court has additional information it may consider.  Where information is referenced in a pleading that would be dispositive if the supporting document had been included, the Court may look to that referenced document in consideration of a motion to dismiss.  See Rubio, 613 F.3d at 1199; Davis, 691 F.3d at 1159-60.  Here, the Defendants submitted such documents.  The first is a set of correspondence sent to Plaintiff at his Korea address. Mot. Ex. 1.  The second is two pages of a fax from Plaintiff.  Mot. Ex. 2.  The fax pages included are a cover sheet entitled "Economic Hardship Deferment Request - dated 03/26/2009" (including Plaintiff's address in Korea) and one page including Plaintiff's

**United States District Court**
For the Northern District of California

1  address in Korea plus a breakdown of Plaintiff's finances.  The

2  <u>Plaintiff</u> referenced this information in the pleading.  FAC ¶¶ 10

3  (the existence of the loan was "unknown to Plaintiff until long

4  after he graduated"), 21 (Sallie Mae claimed Plaintiff "had

5  received correspondence at the correct address and he was aware of

6  the debt"), 22 ("Plaintiff found out about the loans well after he

7  graduated from college.  After learning the loans existed,

8  [P]laintiff made some payments on the loans in protest and in an

9  effort to mitigate damage to his credit standing.").  These

10  references show that Plaintiff at some point received documentation

11  learning of the loan and that the address where information was

12  sent was somehow verified or made accurate.  When and how this

13  happened is central to the Plaintiff's claims, as otherwise they

14  may be time-barred.  No party has questioned the authenticity of

15  the documents attached to Defendants' motion.  <u>See</u> <u>Marder</u>, 450 F.3d

16  at 448.[2]  Thus the Court's incorporation of this document meets the

17  standards set out by the Ninth Circuit.  <u>See</u> <u>Rubio</u>, 613 F.3d at

18  1199; <u>Davis</u>, 691 F.3d at 1159-60.  Accordingly, the Court hereby

19  incorporates the documents and considers them in determining

20  whether the claims are time-barred.[3]

21       The dates on these documents show Plaintiff sent Defendants

22  correspondence regarding a loan deferral on or about March 26,

23

24  [2] Plaintiff disputes their significance but not authenticity.
    Opp'n at 9 ("Navient corresponded with [Plaintff] about the student

25  loans when [Plaintiff] was working in Korea, but that was after the
    loans had been extended and after he had graduated from college.").

26  [3] Two other exhibits submitted with and attached to the Defendants'
    motion are also incorporated on the same basis.  <u>See</u> Mot. Ex. 3 (a

27  police report referenced at FAC ¶ 16); Mot. Ex. 4 (a letter from
    Defendants dated March 7, 2014, refusing Plaintiff's request based

28  on the results of its investigation, referenced at FAC ¶ 21).

United States District Court
For the Northern District of California

1   2009, and Defendants thereafter sent regular correspondence to the

2   same address of origin in South Korea.  Even making assumptions

3   most favorable to the Plaintiff, namely that this date really is

4   the earliest that Plaintiff learned of the loan, the date is five

5   years prior to the FAC.  The date also suggests that Plaintiff was

6   aware when Defendants made reports of loans being late in July 2011

7   and March 2009.  The earlier of the relevant statutory limitations

8   is thus two years after the Plaintiff knew of the violation.  When

9   applied, Plaintiff's claims seem to all be clearly time-barred.

10      Plaintiff's case is saved, however, by its argument that

11  "Navient first violated the FCRA in this case when it failed to

12  conduct a reasonable investigation in May 2014 following receipt of

13  notices from the CRAs that [P]laintiff was disputing is [sic]

14  credit reporting."  Opp'n at 10.  Whereas Plaintiff knew of the

15  fraudulent loans earlier, the specific cause of action of which

16  Plaintiff complains is simply failure to conduct a reasonable

17  investigation upon a proper notice from the CRA.  As March 2014 is

18  within the 2 year period (as is May 2014), the suit is timely.  See

19  Deaton v. Chevy Chase Bank, 157 F. App'x 23, 24 (9th Cir. 2005).

20  In Deaton, a bank allegedly violated Section 1681s-2(b) by failing

21  to investigate erroneous charges placed on a credit card.  Id.  The

22  panel found that the duty to investigate was triggered when, after

23  the consumer notifies the credit reporting agency of the dispute,

24  the credit reporting agency notifies the funisher.  Id. (citing

25  Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th

26  Cir. 2002)).  As the banks' "liability could not have arisen until

27  they were notified and their duties under the act were triggered,"

28  the suit was not time-barred.  However, this did not save any of

**United States District Court**
For the Northern District of California

1  the other claims in <u>Deaton</u>.  So, too, the claims that Defendants

2  failed to investigate are timely, but other claims relating to

3  older reports or offenses dating back over two years are untimely.

4     The Court considered and rejects Plaintiff's second argument,

5  that the updates to the CRAs on a monthly basis renews the period.

6  Opp'n at 10.  The Court is cognizant that there is a split as to

7  whether a re-report of allegedly false information resets the

8  statute of limitations.  <u>See</u> <u>Maiteki v. Marten Transp. Ltd.</u>, 4 F.

9  Supp. 3d 1249, 1254 (D. Colo. 2013) (collecting authorities and

10  holding that "each re-report of allegedly false information

11  triggers a new duty to conduct a reasonable investigation, which in

12  turn restarts the limitations period for an FCRA claim based on the

13  failure to conduct a reasonable").  Here, however, the Court need

14  <u>not</u> take a side, because there is no allegation by Plaintiff that

15  he has actually made a new complaint to the CRAs since the one

16  cited in the complaint.  Therefore, even if the view expressed by

17  <u>Maiteki</u> is correct (a matter the Court does not decide), it would

18  not apply to this case.[4]

19     Turning to the California Civil Code and Plaintiff's claims

20  made pursuant thereto, Section 1785.25(a) is the only substantive

21  _____

22  [4] The Court also considers and rejects Plaintiff's reliance on <u>Hyde</u>

23  <u>v. Hibernia Nat. Bank in Jefferson Parish</u>, 861 F.2d 446, 449 (5th
Cir. 1988).  Therein, the Fifth Circuit -- a persuasive source the

24  Court is not mandated to accept -- states that "[t]he requirement
that a consumer sustain some injury in order to establish a cause

25  of action suggests that the statute should be triggered when the
agency issues an erroneous report to an institution with which the

26  consumer is dealing."  This decision, however, was well before the
Supreme Court's dicta in <u>TRW</u>.  Moreover, similar to the logic

27  above, Plaintiff here cites no specific instance of transmission by
the agency to an institution, and therefore this case would fail to

28  fall under the umbrella of <u>Hyde</u> even if the Court were required to
follow <u>Hyde</u> (which the Court is not).

CCRAA furnisher provision specifically saved by the FCRA from preemption. <u>Carvalho</u>, 629 F.3d at 889.  Insofar as the Plaintiff makes claims under 1785.25(b) and (c), SCA ¶ 42, those claims are preempted.  The Court must look to the terms of the California law to determine if the remaining CCRAA claim is timely.  The Court finds it is.  Under California law, a case must be brought within two years from the date plaintiff knew or should have known of the violation, "but not more than seven years from the earliest date on which liability could have arisen."  Cal. Civ. Code § 1785.33.  Accordingly, the same logic from the FCRA applies, and the claim is timely only as to the claims that investigations were unreasonable.

Therefore, the Court DISMISSES as time-barred all claims except those related to unreasonable investigations conducted in 2014.  Plaintiff is GRANTED LEAVE TO AMEND to include other claims only insofar as Plaintiff includes clear dates to allow the Court to evaluate whether the claims are timely per the analysis above, and such dates comport with those already incorporated by reference into prior pleadings by the Court.

**B.    <u>FCRA Claims</u>**

Defendants make three primary arguments that the FCRA claims are not valid.  They argue that the investigation was proper, its findings factually accurate, and not misleading.  <u>See</u> Mot. at 6-9.  They argue that Plaintiff cannot collaterally attack debt under the guise of an FCRA claim.  <u>See</u> Mot. at 9-10.  And they argue that no actual damages were alleged by Plaintiff.  <u>See</u> <u>id.</u> at 10-11.  Plaintiff responds that its FCRA claims are valid by virtue of alleging that Defendants' reports to CRAs were inaccurate and misleading thus failing to meet the criteria of a reasonable

investigation, and then Plaintiff attempts to directly refute Defendants' two other arguments.  See Opp'n at 5-8.  The Court considers each argument in turn.

### 1.   Reasonableness of the Investigation

Parties agree that there is only a private right of action to pursue claims pursuant to 15 U.S.C. § 1681s-2(b), under §§ 1681n & o.  See Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1060 (9th Cir. 2002).  Pursuant thereto, there is a duty to investigate when a CRA receives notice directly from a consumer or reseller that a consumer disputes the accuracy of the reporting. 15 U.S.C. § 1681s-2(b).  If the investigation finds that the information is "incomplete or inaccurate," those results must be shared with other consumer reporting agencies and compiled.  Id. at § 1681s-2(b)(1)(D).  If information is found to be "inaccurate or incomplete or [it] cannot be verified after any reinvestigation," the information must be modified or deleted, or reporting of that item must be permanently blocked.  Id. at § 1681s-2(b)(1)(E).

An element considered as to the requirement to conduct a reasonable investigation is that Plaintiff identifies a factual inaccuracy in Defendants' reporting.  See Carvalho, 629 F.3d at 890.  Parties both admit Defendants conducted an investigation. Thus, the core disagreements between the parties are whether that investigation was not "unreasonable" and whether the information garnered from that investigation showed that there was inaccurate or misleading information being reported.  See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009) (a furnisher's investigation per § 1681s-2(b)(1)(A) "may not be unreasonable."). Here, both sides seem to agree that the loan application was made

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

by Plaintiff's parents, that the loan was made without Plaintiff's express consent, that Plaintiff benefitted from the loans, that Plaintiff at some point learned of the loans, that the loan was not fully paid on time, and that Plaintiff made payments on the loan. Mot. at 2-3, Opp'n at 4-5.  Parties disagree as to where to assign the blame -- to Plaintiff or to Plaintiff's parents -- but it is unclear what <u>fact</u> is in error.

Yet even were the Court to assume Plaintiff sufficiently cited a fact in error (a topic discussed below in connection with ratification), Plaintiff still bears the burden of showing the investigation was unreasonable.  <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009); <u>O'Connor v. Capital One, N.A.</u>, No. CV 14-00177-KAW, 2014 WL 2215965, at *7 (N.D. Cal. May 29, 2014).[5]  A formulaic recitation of the elements of a cause of action are insufficient to survive a motion to dismiss.  <u>Twombly</u>, 550 U.S. at 555.  Here, the Court may or may not ultimately agree with the legal conclusion reached by Defendants, but that does not belie the reasonableness of the investigation or compliance with the statutory duties at issue.  <u>See Landini v. FIA Card Servs.</u>, <u>Nat'l Ass'n</u>, No. C13-01153 HRL, 2014 WL 587520, at *4 (N.D. Cal. Feb. 14, 2014).  The Ninth Circuit has summarized this idea:

///

---

[5] There are insufficient factual allegations where a plaintiff alleges only that he reported alleged inaccuracies to the CRAs and to a defendant, and that defendant did not delete "information found to be inaccurate and erroneous, and/or failed to properly investigate Plaintiff's disputes" and failed to conduct a proper and lawful reinvestigation.  <u>O'Connor</u>, 2014 WL 2215965, at *7; <u>see also Berberyan v. Asset Acceptance, LLC</u>, CV 12-4417-CAS PLAX, 2013 WL 1136525, at *5 (C.D. Cal. Mar. 18, 2013) (allegations that a furnisher "fail[ed] to conduct a proper investigation" did not state a claim under Section 1681s-2(b)).

**United States District Court**
For the Northern District of California

As Gorman explains, an FCRA violation is tied to the reasonableness of an investigation rather than the accuracy of its results.  In Gorman, over a furnisher's objection, we held that upon receiving notice of a dispute from a CRA, a furnisher's investigation must be "reasonable."  584 F.3d at 1155–57.  In so concluding, we did not hold the furnisher to an impossible standard that rendered it liable anytime its investigation did not reach the correct result.  We recognized that factors beyond a furnisher's control may doom the most conscientious investigation to an erroneous result: for example, we noted that in Gorman, a CRA had provided the furnisher with "scant information," to carry out the investigation.  Id.  We therefore concluded that the furnisher's inaccurate reporting after an investigation was not dispositive proof that its investigation was unreasonable, as despite reasonable efforts, it may not have been given sufficient information to reach the correct conclusion despite reasonable efforts.  Id. at 1157.  In short, "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."  Id. at 1161.  Thus, Gorman imposes fault, not for an investigation that produces incorrect results, but for an unreasonable investigation.

Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1110 (9th Cir. 2012).

The idea behind Carvalho and Gorman is to ensure that investigations are real, meaningful tools used by (both investigating agencies and) furnishers, but also to keep legal decisions in the hands of the Court without turning other bodies into courts.  See Carvalho, 629 F.3d at 890–92; Gorman, 584 F.3d at 1155–57.  Here, there is no question that the Defendants tried to investigate and in fact found information that confirmed there may have been fraud.  But Defendants also found information that, on its face, looks very much like the proper legal grounds for ratification and assumption of a loan by a third party (a topic the Court addresses further below).  See Mot. Ex. 4 (incorporated above into the complaint by reference).  On those grounds, it was not

**United States District Court**
For the Northern District of California

1  unreasonable for the Defendants to arrive at their conclusion that

2  the Plaintiff was in fact responsible for the loan.  This may not

3  be sufficient for a legal ruling on ratification of the loan by a

4  court, but it does show that Defendants engaged in a reasonable

5  investigation pursuant to its responsibilities under the FCRA.

6      As Plaintiff fails to show how the investigation was

7  unreasonable, he fails to carry his burden, and his claims

8  accordingly fail as a matter of law.  The claims are therefore

9  DISMISSED WITHOUT PREJUDICE.  As there is no remedy requested by

10  Plaintiff to address the potentially fraudulent nature of the loan

11  -- and based on information the Court presently has available such

12  remedies may be time-barred -- the Court does not reach an analysis

13  of whether the loan would be fraudulent if challenged directly.

### 2.   Collateral Attack

15      Defendants' collateral attack arguments point to a valid

16  concern, but as stated are in error.  Carvalho makes clear at

17  length that CRAs are not equipped to make determinations on legal

18  defenses.  Carvalho, 629 F.3d at 891 (explaining that there is a

19  valid FCRA claim where a court finds a mortgage invalid yet a CRA

20  continues to report the debt as valid).  However, Carvalho also

21  clarifies that "[t]he proper recourse for the consumer, therefore,

22  was to resolve the issue in a suit against the creditor" and then

23  challenge a CRA under the FCRA if the CRA continued to report a

24  debt the court invalidated.  Id. at 891-92.

25      Here, the Plaintiff has brought suit against the creditor,

26  negating what Defendants cite as a collateral attack.  But the

27  Court does note that critically the suit does not ask the Court to

28  annul the loan itself as fraudulent, but rather asks for such

**United States District Court**
For the Northern District of California

relief as might be available under the FCRA for an unreasonable
investigation.  Neither side states it succinctly in its brief, but
the logic seems to be that the reasonableness of the investigation
is clearly defeated where there is an obvious defense to a loan
(namely, the loan is fraudulently created).  However, where there
is a defense to the defense to the loan, the reasonableness seems
less readily attacked by citing a potential error in application of
a second-order legal test.  Thus, for reasons other than those
cited by Defendants, the Court agrees there is a degree to which
the Court is being invited to address a collateral issue beyond the
scope of the pleadings.  Insofar as such an invitation is being
offered, the Court declines.

### 3.   Actual Damages

Plaintiff's damages must be limited to harm resulting during
or after 2014, when the allegedly unreasonable investigation led to
harmful credit reporting.  While the Plaintiff pleads damages that
facially might seem to satisfy Fed. R. Civ. P. 8(a)(3), there is
not enough information provided for the Court to determine if the
damages are actual, punitive, supported by true facts, or merely
pleading the elements of the offense.  See Twombly, 550 U.S. at
555.  The Court is mindful that "[p]unitive damages, which
[Plaintiff] [seeks] in this case, could presumably be awarded at
the moment of [Defendants'] alleged wrongdoing, even if 'actual
damages' did not accrue at that time."  See TRW, 534 U.S. at 35.
Therefore, the Court does not preclude the possibility of such
damages.  The Court does, however, find that they have not been
adequately pleaded here and thus the claims are DISMISSED WITHOUT
PREJUDICE.

**United States District Court**
For the Northern District of California

In connection with damages arguments, Plaintiff argues that Defendants acted in reckless disregard when Defendants recognized that Plaintiff's parents (vice Plaintiff himself) signed the loan documents yet still refused to concede Plaintiff was not obligated on the loans.  Opp'n at 8.  However, "a company subject to FCRA does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007).  No such showing has been adequately pleaded when considered in light of the Court's analysis above that there was a reasonable potential defense available to the Defendants (ratification) to the Plaintiff's allegation of fraud.

### C.  Whether Plaintiff Ratified the Loans

Whether Plaintiff ratified the loans is significant.  But the Court need not reach a final legal conclusion as to ratification to resolve the motion at issue.

Generally, "[r]atification requires that the principal, knowing the facts, accepts the benefits of the agent's actions." Mallott & Peterson v. Dir., Office of Workers' Comp. Programs, Dep't of Labor, 98 F.3d 1170, 1174 (9th Cir. 1996) (citing Alvarado Community Hosp. v. Superior Court, 173 Cal. App. 3d 476, 481-82 (1985) rev'd on different grounds by Price v. Stevedoring Servs. of Am., Inc., 697 F.3d 820 (9th Cir. 2012)).  The longstanding rule in California defines ratification as follows:

> Ratification is the subsequent adoption by one claiming the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent

of him who affirms the act and who had the power to confer authority. A principal cannot split an agency transaction and accept the benefits thereof without the burdens. . . . Ordinarily, the law requires that a principal be apprised of all the facts surrounding a transaction before he will be held to have ratified the unauthorized acts of an agent. However, where ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable man on inquiry notice.

Reusche v. California Pacific Title Ins. Co., 231 Cal. App. 2d 731, 737 (1965) (citations omitted).[6]

An unauthorized signature may also be ratified. See U.C.C. 3403(a); see also 4 Witkin, Summary 10th (2005) Neg Inst, § 40, p. 400; Estate of Stephens, 28 Cal. 4th 665, 673 (2002) ("Ratification of an 'invalid execution,' however, must itself be in writing where the agent enters into a contract that must be in writing."); Common Wealth Ins. Sys., Inc. v. Kersten, 40 Cal. App. 3d 1014, 1025 (Cal. Ct. App. 1974) ("under Code [S]ection 3404, a forged signature may be ratified even where the forger is not the agent of the purported signer.").[7]  "Whether there has been ratification of a forged signature is ordinarily a question of fact."  Kersten, 40 Cal. App. 3d at 1026.  However, as discussed below, Kersten itself provides an example where the issue may be resolved on summary judgment.

_____

[6] The Court is well satisfied that Reusche remains good law despite its apparent age, as it continues to be cited by both the Ninth Circuit and California courts for its definition and discussion of ratification.  See, e.g., In re Cool Fuel, Inc., 117 F. App'x 514, 516 (9th Cir. 2004); Behniwal v. Mix, 133 Cal. App. 4th 1027, 1041-42 (2005); Peterson v. Bonner, No. A139033, 2015 WL 1855823, at *5 (Cal. Ct. App. Apr. 22, 2015), reh'g denied (May 19, 2015), review denied (July 8, 2015) (this unpublished decision is cited for the strictly limited purpose of showing recent reliance on Reusche as still good law).

[7] Kersten also held that Section 3404 permits "a person whose signature is forged [to] be estopped to deny its validity." Kersten, 40 Cal. App. 3d at 1026.

There are numerous examples of where ratification was found to bind a party to an agent's actions.  In Reusche, an owner's agent forged a promissory note and deed of trust and the agent placed the money from the loan into his (the agent's) own account.  Reusche, 231 Cal. App. 2d at 735.  However, the owner ratified the loan by sending a check from her agent drawing on the proceeds of the loan, by making no offer to return the loan upon learning of the forgery, and by failing to make reasonable inquiries.  Id. at 735, 737-38.  In Kelley, initialing an implied recognition that one lease had been terminated was enough to ratify an unauthorized action by an agent.  See Kelley v. Jones, 272 Cal. App. 2d 113, 120-21 (1969); see also Behniwal v. Mix, 133 Cal. App. 4th 1027, 1041-42 (2005) ("If merely keeping a check, or initialing an implied recognition that one lease had been terminated, were sufficient ratifications of an agent's previous acts in, respectively, Reusche and Kelley, then surely the signing of disclosure forms is sufficient here.").

Other cases provide contrary examples.  In Rouse, an agent executed a note and signed a mortgage without authority, purporting to bind a defendant.  Brown v. Rouse, 104 C. 672, 675 (1894).  However, there was no ratification -- even where defendant allowed the agent to pay two installments of interest -- because the defendant believed improperly that she was bound.  In Pacific Bone, Coal & Fertilizer Co. v. Bleakmore, 81 C.A. 659, 664 (1927), there was no ratification where a purported agent made a deal without defendant's knowledge, where pursuant thereto fertilizer was spread over defendant's land before defendant learned of the deal, and where it was therefore impossible to return the fertilizer.  See also 3 Witkin, Summary 10th (2005) Agency, § 141, p. 185.

**United States District Court**
For the Northern District of California

Courts have also considered whether ratification can be achieved through inaction upon discovery.  In Rakestraw, where a victim of fraud waited three whole years after discovering forgeries (and then only until a law suit was filed against her) to challenge the underlying action, the victim was deemed to have ratified the action.  Rakestraw v. Rodrigues, 8 Cal. 3d 67, 74-75 (1972).  Rakestraw explained:

> exoneration by ratification, however, 'is limited, so far as the agent is concerned, to those cases where there remains with the principal, after his first complete knowledge of the transaction, the power to rescind, and failing so to do he is properly charged with full acceptance of all the responsibilities of the contract, even to the exoneration of his agent, because, with the ability to rescind, if he had rescinded, the transaction would be at an end and nobody would be injured.' (Pacific Vinegar etc. Works v. Smith[,] 152 Cal. 507, 511-512 [(1907)].) Here it is clear that Joyce elected not to rescind at a time when she was fully informed and had power to do so and had been advised of her rights."

Id.  In Kersten, drawing a salary for four or five months and repaying a loan of $5,000 based on a forged signature before repudiating it constituted "sufficient evidence to support a finding [by a Court] of ratification based on acquiescence." Kersten, 40 Cal. App. 3d at 1027.

The Court need not resolve exactly whether Plaintiff better resembles one who accrues a benefit that cannot be returned or one who has ratified a loan after-the-fact or one who has by delay ratified a fraudulent action.  Instead, the Court need only resolve whether the investigation was reasonable and whether Plaintiff has cited a specific fact that was reported in error by Defendant.  As to the former, per the Court's explanation above, the Court finds the investigation was reasonable given the facts as pleaded.  As to the latter, the variety of cases on this matter, complexity of the

United States District Court
For the Northern District of California

Court's own analysis, and the progress Defendants made along the same lines shows that Defendants did not engage in a quick, simple, or purely self-serving analysis.  Even so, Plaintiff's pleadings suggest that the only payments made were those necessary for quick-response mitigation rather than a desire to actually take on the loans.  The Plaintiff may therefore be able to plead facts (and, if permitted discovery, show facts) which would support that he did not ratify the loan despite its delayed response after learning of them.  If so, Plaintiff may be able to support a <u>legal</u> conclusion that the Defendants improperly applied a <u>legal</u> exemption to fraud. However, the key to Plaintiff's success would be somehow transforming these two legal conclusions into a misreported <u>fact</u> that ratification occurred or that the student loans did not belong to the Plaintiff, thereby making the investigation unreasonable.

The Court is agnostic whether the law can support such a transformation or the attendant legal conclusions.  However, the Court has been provided with insufficient pleadings, evidence, and briefing by parties to reach a final ruling at this time -- and need not do so to resolve this motion.  What is clear now is that the pleadings are insufficient as drafted for the above purposes. Therefore, the claims are DISMISSED WITHOUT PREJUDICE.

## D.   **The Validity of CCRAA Claims**

While the Court has recognized, per <u>Carvalho</u>, that Congress saved Section 1785.25(a) from preemption, deducing a violation of that subsection requires substantially similar information as a violation of the FCRA.  For the same reasons and on the same logic presented in connection with the Court's decision on the FCRA,
///

**United States District Court**
For the Northern District of California

1  above, the Court DISMISSES WITHOUT PREJUDICE the CCRAA claims not

2  already preempted.

3      **E.   <u>Summary Judgment</u>**

4      The Court has cited numerous failures by Plaintiff to

5  adequately plead information necessary to state a cognizable claim.

6  Defendants urge the Court to grant summary judgment.  However,

7  given the pleadings and the state of the briefing, the Court is not

8  confident that Plaintiff could not state a claim, making it

9  improper at this juncture to grant a motion to dismiss <u>without</u>

10 leave to amend.  The granting of summary judgment would require the

11 Court to believe that any possible claim would in no way turn on

12 any genuine issue of material fact.  Yet Defendants' brief is

13 replete with allegations that Plaintiff's complaint already

14 contains false information or does (or will) not contain adequate

15 proof.  <u>See</u> Mot at 2-3, Reply at 9.  Such statements signal to the

16 Court that consideration of summary judgment is premature or not

17 warranted at this time.  Therefore, Defendants' motion for summary

18 judgment is DENIED WITHOUT PREJUDICE.

19

20 **V.   <u>CONCLUSION</u>**

21     Defendants' motion to dismiss is GRANTED and the FAC is

22 DISMISSED WITHOUT PREJUDICE.  Defendants' motion for summary

23 judgment is DENIED WITHOUT PREJUDICE.  Defendants' motion for

24 judicial notice is DENIED WITHOUT PREJUDICE.  The Court notes it

25 has incorporated into the complaint and therefore considered

26 Exhibits 1, 2, 3, and 4 attached to Defendants' 12(b)(6) motion.

27 Plaintiff is granted leave to amend within 30 days of the date of

28 this Order to remedy the deficiencies discussed in this Order <u>if</u>

1  Plaintiff can do so truthfully and without contradicting the
2  allegations in any prior pleadings or documents incorporated into
3  the FAC.  If Plaintiff references any additional documents in its
4  Second Amended Complaint ("SAC"), such documents are already within
5  the possession and control of Plaintiff, such documents are readily
6  available, and such documents tend to prove a date on which an
7  event of relevance occurred, Plaintiff is hereby ORDERED to attach
8  a true and correct copy of all such documents to the SAC.

10  IT IS SO ORDERED.

12  Dated: September 3, 2015

13  UNITED STATES DISTRICT JUDGE